205 P.2d 367

**UTAH CONST. CO. v. BERG et al.**

**No. 5061.**

Supreme Court of Arizona.

April 18, 1949.

286

STANFORD, J., dissenting.

Guynn & Twitty, of Phoenix, for petitioner.

H. S. McCluskey, of Phoenix (Robert E. Yount, of Phoenix, of counsel), for respondents.

UDALL, Justice.

The Utah Construction Company, as employer (petitioner), by proceedings in certiorari has brought before us for review an award made against it by The Industrial Commission of Arizona in favor of Anton K. Berg (claimant). The award of the Commission granted compensation and medical benefits to Berg for total disability due to silicosis complicated by tuberculosis.

While there are numerous assignments of error and propositions of law advanced by petitioner, we deem it unnecessary to set them out for the reason that they can be resolved into these contentions: (1) There is no substantial, competent evidence that claimant was exposed to harmful quantities of silicon dioxide dust (Si02) in Arizona (a) for a total period of not less than 1200 work shifts during the ten-year period immediately preceding the disablement, and (b) for a period of sixty days while working for petitioner, the employer in whose employment claimant allegedly was last exposed to such dust. (2) There was no proof of causal connection between his disability and any exposure to silicon dioxide dust either while in the employ of petitioner or in his employment in the state of Arizona during the ten-year period preceding his disablement. (3) The Commission had failed to act judicially in conducting these hearings in that they took judicial notice of numerous matters not properly the subject of judicial notice.

Claimant Berg was born in Sweden in the year 1894, and he came to Arizona in 1916. During the period 1917 to 1929 he was engaged in underground work, drilling, blasting and hard rock mining, for the Verde Extension Mining Company at Jerome. Thereafter during the years 1937, 1939 and for a short time in 1945 he worked a total of some 581 shifts as an underground miner for the Arizona Magma Mining Company, the Tennessee-Schuykill Corporation and the Copper Belt Mining Company. From 1929 to 1936 he shifted to surface road construction work in this state and for a time during the years 1943 and 1944 he was employed in similar work both in California and in Central America on the Pan-American Highway. The balance of his work tabulation schedule shows employment by various highway contractors in Arizona as a powderman, jackhammer operator and laborer. Claimant's last employment was with the petitioner on the Davis Dam Project then under construction the Colorado River some distance below Boulder Dam. While with petitioner Berg

worked 106½ shifts, covering the period April 16 to August 24, 1946.

On June 16, 1946 claimant first consulted a doctor regarding his physical condition, complaining to Dr. Findlay of Kingman of "sore throat, hoarseness, weight loss for one year and weakness". X-ray films and later sputum tests enabled the doctor to diagnose the ailment as silicosis and tuberculosis. His advice to claimant at first was to continue working but less strenuously. However, the condition became progressively worse, and by August 24, 1946, Berg was totally disabled and his employment was terminated. A medical examining board composed of Drs. Watkins, Baldwin and Kober on December 2, 1946, confirmed the diagnosis of Dr. Findlay, commenting, "From the history of sufficient exposure to dust, the general condition of the patient and the evidence given by sputum and X-ray examination, it is concluded that this patient has silicosis, of about a stage two, and advanced bilateral cavernous tuberculosis. From a medical standpoint, he is totally disabled from tuberculosilicosis."

Berg, on September 23, 1946, filed a claim for compensation with the Commission under the Occupational Disease Disability Law naming L. E. Dixon Construction Company (by whom he had been employed from September to December, 1945) as the responsible employer. Subsequent proceedings were, by action of the Commission, directed against the petitioner (Utah Construction Company) as the employer. Numerous hearings and rehearings were held before the Commission and its referee, both at Kingman and in Phoenix, and on March 12, 1947, claimant was first awarded compensation against the petitioner. However, in May of that year the claim against petitioner was dismissed by the Commission, it expressly finding in reversing the earlier award that the evidence indicated applicant had not been exposed to harmful quantities of silicon dioxide dust during a sixty-day period while employed by petitioner. Then on December 2, 1947, a majority of the Commission again "about-faced" and made a final award against petitioner favorable to claimant Berg. When petitioner let it be known that it would appeal from this ruling, the Commission on the same date made an alternative award upon the same, findings in claimant's favor against the L. E. Dixon Company as employer and The Industrial Commission of Arizona as insurance carrier for said company. It was recited in the order that this last named employer is no longer engaged in business in Arizona, its insurance policies have been cancelled, said company will not be affected by any award made, and that the State Occupational Disease Disability Fund, section 56-1217, A.C.A.1939, is liable for such an award.

While under our rules of procedure claims for relief or defenses may be pleaded in the alternative, regardless of consistency, section 21-408, A.C.A.1939, Rules Civ. Proc. Rule 8(e), this is the first time we

have ever heard of a finding of fact in the alternative. Section 56-1214, A.C.A.1939. plainly states that the only employer liable in these cases shall be the employer in whose employment the employee was last exposed to harmful quantities of silicon dioxide dust during a period of sixty days or more. Obviously, both findings, i. e., that each of the named employers was the one in whose employment the claimant was last exposed to harmful quantities of silicon dioxide dust for a period of sixty days or more cannot be true. Such dual and inconsistent findings merely cast a cloud on the verity of either, for if the L. E. Dixon Company was the last employer with whom the claimant was harmfully exposed, then no award should have been made against the Utah Construction Company, and vice versa. Moreover, we are unable to find any statutory authorization for an award by the Commission being made in the alternative.

This is a companion case to Phelps Dodge Corporation v. Ford, 68. Ariz. 190, 203 P.2d 633. The two cases were argued together and to a certain extent were jointly briefed. They are of first impression, and present some questions not heretofore passed upon by this court in interpreting the Occupational Disease Disability Law as it pertains to silicosis. Laws 1943, chapter 26; article 12, chapter 56, pocket supplement A.C.A.1939. The pertinent sections of the law are set out at length in the opinion in the Ford case and will not be repeated here except where and insofar as necessary.

In its determination of this case the Commission took judicial notice of numerous matters upon which no competent testimony had been introduced, and to a great extent the award is predicated upon these assumed facts thus injected into the record. We point out some of the more glaring instances in which the doctrine of judicial notice was invoked by the Commission. It took judicial notice of: (a) the relative high humidity and high summer temperatures in the canyon section of the Colorado River at Davis Dam; (b) the effects of silica, even in minimum quantities, by reason of humidity and high temperatures; (c) the degree of tolerance of an individual to poison under one circumstance does not hold true in a different environment; (d) the files of the Commission in other silicosis cases; (e) the closing remarks and summary of the Fourth Saranac Laboratory Symposium on Silicosis held in June, 1939; (f) excerpts from the enlightening book Pneumoconiosis (Silicosis), by Drs. Lewis Gregory Cole and William Gregory Cole; (g) statements of the late Dr. Leroy U. Gardner copied from an article in Occupational Medicine volume 4, number 1, July 1947, as reprinted from the Thirtieth Biennial Report of the Department of Labor and Industry of Minnesota, 1945-1946; (h) the knowledge obtained by Commissioner Rooks and Referee Yount on an inspection trip to Davis Dam.

■ Judicial notice of a fact, where it can properly be recognized, takes the place of proof and is of equal force. Before a court or quasi-judicial body, such as the Industrial Commission, can take judicial notice of a fact, the basic requirement must be met, to-wit: A fact to be judicially noticed must be certain and indisputable, requiring no proof, and no evidence may be received to refute it. We reaffirm the principles governing this matter of judicial notice enunciated in the Ford case, supra.

We think that the following comments upon some of the matters listed above (which are not covered by the Ford opinion) might not be amiss. While it might be quite proper to take judicial notice of the high summer temperatures at Davis Dam, which is in the desert country at an elevation of some 600 feet, it runs contrary to all of our understanding of the dryness of the desert air in the adjacent area of Needles, California, to say that a high humidity prevails in that locale. As to taking judicial notice of the Saranac Symposium referred to under (e), it is enlightening to consider the meaning of this term "symposium". Webster's New International Dictionary, second edition, unabridged, defines it in this regard as "A conference at which a particular topic is discussed and various opinions gathered." The learned doctors who authored the book Pneumoconiosis (listed under (f)) frankly state in the introduction, page 3, that the observations that have been made and the conclusions drawn therefrom "are not in accord with accepted ideas". These examples will suffice to demonstrate that the Commission evidently has an entirely erroneous conception of the doctrine of judicial notice.

■ There is no limit to which a court or a quasi-judicial body may go in referring to encyclopedias, dictionaries and scientific publications for the purpose of refreshing recollection or for material which will assist in the clarification or interpretation of evidence. Such procedure is, however, something entirely different from taking judicial notice of a fact and thereby eliminating the requirement of proof of such fact through the introduction of evidence. See 20 Am.Jur., Evidence, section 97; 31 C.J.S., Evidence, § 7; 9 University of Kansas City Law Review (1940), page 38.

■ Certainly the award cannot rest upon the observations as to dust conditions prevailing at Davis Dam gleaned from a visit there by one of the commissioners (one of the two quasi-judicial officers who signed the award) and the commission's referee. From time immemorial the law has been "That a presiding judge cannot give judgment on his personal and private knowledge * * *". First National Bank v. Clifton Armory Co., 14 Ariz. 360, 128 P. 810, 812, Ann.Cas.1915A, 1061. The observations and state of mind of these officials is no substitute for evidence.

292

■ Equally fallacious is the contention by the Commission that, as they are presumed to be experts in their field, the expert knowledge of the commissioners gained through the handling of similar cases obviates the necessity of evidence as to these matters, and that the claim may be determined, in part at least, by such expert knowledge of the commissioners. In support of this line of reasoning we are cited to the case of McCarthy v. Industrial Commission, 194 Wis. 198, 215 N.W. 824, 826, wherein the court said:

"Why constitute experienced and expert men as fact finders if their findings of fact upon expert matters are to be overturned by courts, the personnel of which have neither the knowledge nor experience of such matters enjoyed by the members of the Industrial Commission?"

A complete answer to this argument is contained in a later opinion from this same court:

" * * * It is true that this court has recognized that the members of the Industrial Commission are expert triers of fact, and have deferred to this expertness in situations involving an appraisal of the convincing power of expert testimony, and have sustained the power of the commission to reject it when contrary to the commission's expert knowledge on the subject. (Citing McCarthy v. Industrial Commission, supra, and other Wisconsin cases.) This does not mean, however, that this court can or should abdicate its function of reviewing the record before the commission to ascertain whether there is evidence to support it. Carried to its logical conclusion, the contention of the commission would require such an abdication in all cases involving expert knowledge and opinion. * * *" F. A. McDonald Co. v. Industrial Commission, 250 Wis. 134, 26 N. W.2d 165, 166.

■ It must be kept in mind that liability does not attach merely by virtue of employment, but only if the requirements set forth in the statute have been met, and the burden rests upon the claimant to establish all the material elements necessary to the granting of an award. Aluminum Co. of America v. Industrial Commission, 61 Ariz. 520, 152 P.2d 297. Nor can this burden of proof be shifted to the employer by the Commission's adopting premises for a decision which are not supported by the evidence. That this was done here is shown by the order of the Commission affirming its award and stating as a justification that the petitioner failed "to tender any additional evidence, or to request the calling of any witnesses, or indicating that it had any evidence to refute certain of the premises upon which the findings and award of the Commission were based, * * *"

One of the most vital and sharply contested issues in the case before us was whether the claimant had been exposed to "harmful quantities" of silicon dioxide dust both for a total period of not less than

1200 work shifts in Arizona during the ten years immediately preceding his disablement and during a period of sixty days or more while in the employ of petitioner as the last employer as required by sections 56-1213(a) 3 and 56-1214, pocket supplement, A.C.A.1939. The evidence was in conflict as to the number of shifts worked by claimant during the ten-year period. Claimant's tabulation, which was accepted by the Commission, showed a total of 1238 work shifts, while the petitioner maintained that the true total was less than the required 1200 shifts. Petitioner's computation is based upon the theory that though claimant worked for it for a period of 106½ shifts (more than 60 days time), the evidence demonstrated that at the outside claimant was exposed to harmful quantities of silicon dioxide dust for only 20% of the time during each shift, and that therefore claimant's total elapsed exposure was only for a period of 21.3 shifts or days. If this view were adopted as correct, claimant would certainly not be entitled to an award of compensation, for he would be unable to meet the requirements of the statutes as to exposure, either as to the work shifts during the preceding ten-year period or the 60 days with the last employer.

■ A novel question is thus squarely presented to us: is it necessary for a workman, in order to avail himself of the benefits of the statutes with which we are now concerned, to show an exposure to harmful quantities of silicon dioxide dust through-out the entire period of each working shift? The statutes fail to supply a direct answer, and we have been unable to find any authorities (nor have any been cited to us) which will materially aid us in the determination of the question. However, when we consider the wording of the statutes, the nature of this disease and the purpose of this remedial legislation (it being deserving as is the Workmen's Compensation Law, In re Mitchell, 61 Ariz. 436, 150 P.2d 355, of a liberal interpretation) we are impelled to adopt a realistic and practical view and hold that the legislature must have intended that intermittent exposure for any appreciable period of time to harmful quantities of such dust throughout the work shift would constitute sufficient exposure so as to enable the workman to include that day or shift in his computation of the total required time.

■ An even more troublesome question is presented when we are called upon to determine what constitutes "harmful quantities" of silicon dioxide dust. The Act in question fails to either define the term or fix any definite or certain standard of measurement. The Commission contends that this omission upon the part of the legislature was intentional, that the term must be defined in its particular relation to each factual situation and each individual claimant, i. e., were the quantities of silicon dioxide dust to which he was exposed harmful to him. We held in the Ford case, supra, that chapter 25, section

1, Session Laws of 1943, which defined a "hazardous dust condition" for mines, did not furnish a yardstick for surface operations, and that it was not thereby intended to establish a rule of evidence in silicosis cases. And we will not indulge in judicial legislation by attempting to prescribe the minimum number of million particles of air-borne silicon dioxide dust of certain micron dimensions per cubic foot of air which must be found before such dust is present in "harmful quantities". Taking into consideration the indisputable fact that individuals vary greatly in their susceptibility to silicosis, that though laborers may be working side by side under exactly the same conditions, subject to equal exposure to such dust-laden air, some may contract the disease while others suffer no ill effects therefrom, we are led inevitably to the conclusion that the position of the Commission upon this point is correct. The legislature must have intended that the Commission, as the triers of fact, should determine from such competent evidence as (but not limited to) the history of employment, the medical reports both clinical and x-ray, and the diagnosis of the medical experts, whether the claimant had been exposed to such quantities of silicon dioxide dust as were in fact harmful to him. See Henley v. State Compensation Com'r, W. Va., 38 S.E.2d 380; Fraga v. State Compensation Com'r, 125 W.Va. 107, 23 S.E.2d 641. In dealing with a disease such as this, there is no "average man", and the adage "what is one man's meat is another man's poison" would seem to be particularly appropriate. Susceptibility to silicosis, we hold, is primarily an individual and not a mass problem, and is dependent upon various factors such as degree of harmful quantities and duration of exposure.

The record before us, when stripped of those matters of which the Commission erroneously took judicial notice and the inferences improperly drawn therefrom, will sustain only these findings of the Commission: claimant was employed in Arizona for more than 1200 work shifts during the ten years immediately preceding his disablement, of which the last 106½ shifts were worked while in the employment of petitioner; claimant is and has been since August 25, 1946 (the date he terminated his employment with petitioner), totally disabled for work as a result of tuberculosilicosis; and claimant had been exposed to silicon dioxide dust for one day or more subsequent to the effective date (July 1, 1943) of the Occupational Disease Disability Law.

■ There is, however, a complete dearth of evidence to establish that claimant was exposed to silicon dioxide dust for a total period of not less than 1200 work shifts of employment in this State, hence he cannot invoke or rely upon the statutory presumption that such exposure was to harmful quantities of such dust. Section 56-1213(c), A.C.A.1939. Proof that claimant was employed in "dusty trades" is in-

sufficient under our statutes, and it is for this reason that the recent decision from California, Industrial Indemnity Exchange v. Industrial Acc. Comm., Cal.App., 197 P. 2d 75, relied upon by the Commission is inapplicable. This case restated the rule enunciated in Colonial Ins. Co. v. Industrial Accident Commission and Pedroza, 29 Cal. 2d 79, 172 P.2d 884, to the effect that all that needs to be proved is that the employee was exposed to dust while employed by the defendant employer and is suffering from the disease known as silicosis. The California court presumably meant any type of dust while our statutes expressly prescribe that the required exposure must be to silicon dioxide dust before resulting silicosis can be compensable. It is interesting to note that the only specific mention of silicon dioxide dust in the entire record in this case is the testimony of Fred F. Netzeband, the dust engineer who was called as a witness for petitioner.

The Commission relies in part upon the decision of the Utah Supreme Court in the case of Uta-Carbon Coal Co. v. Industrial Commission, 104 Utah 567, 140 P.2d 649. While this is one of the leading cases on the subject of silicosis it does not particularly help in the solution of our problems. The presence of silicon dioxide dust was established in that case by the admission in evidence of a Public Health Bulletin issued by the U. S. Public Health Service, containing a report on dust conditions in mines in the area in which the Uta-Carbon Coal Company's mine was located, coupled with the employer's admission that the conditions in its mine were similar to those described in the report. In the instant case no proof of the existence of silicon dioxide dust in the various places of employment of the claimant was shown.

Section 56-1236, A.C.A.1939, in enumerating the specific diseases deemed to be occupational diseases, defines silicosis (subsection 35) for the purposes of the Act as:

"* * * a chronic disease of the lungs caused by the prolonged inhalation of silicon dioxide dust $(SiO_2)$ characterized by small discrete nodules of fibrous tissue similarly disseminated in both lungs, causing characteristic X-ray pattern, and by variable clinical manifestations."

This definition is in substance the same as that adopted in 1932 by the Industrial Hygiene Committee of the American Health Association. The medical work submitted by the Commission, Pneumoconiosis, by the Drs. Cole, points out that there are four distinct types of silicosis: (1) the peribronchial-perivascular type, (2) the nodular pneumoconiosis type, (3) the pockmarking lesion type, and (4) acute silicosis. Other well known treatises support this classification. Yet only one of these types, number 2, is compensable under restrictive statutes such as ours. According to the Drs. Cole ninety per cent of the cases of pneumoconiosis now recognized as "silicosis" are of types 1, 3 and 4. Furthermore, the same authors state at page 31 of their work

"* * * may we not seriously ask whether 'silicosis' as commonly defined, is caused by silica? And if it is not, what of our legislative acts?" Compensation for silicosis has barely entered upon its trial period in this jurisdiction, and the hope remains that the statutes may be later liberalized by the legislature.

In the instant case neither Dr. Findley nor the medical board appointed by the Commission stated that claimant was suffering from the type of silicosis caused by prolonged inhalation of silicon dioxide dust (2 above), the only type covered by our statute. (Section 56-1236(35), supra.)

█ Claimant Berg has failed to prove another of the elements essential to recovery in this case, i. e., that the employment with petitioner either caused or contributed to his disablement. Proof of proximate causation is required by section 56-1235, A.C.A.1939, which reads:

"* * * The occupational diseases hereinafter defined (section 56-1236, supra) shall be deemed to arise out of the employment, only if there is a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment, and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workmen would have been equally exposed outside of the employment. * * *"

There is in the record no competent evidence which would establish or tend to establish the necessary direct causal connection between the conditions under which Berg worked while employed by petitioner and the disease itself and consequent disablement.

█ Compensation awards must not be founded upon conjecture and speculation. Nor may the fact that the condition of claimant is pathetically tragic be allowed to affect the questions under consideration.

Since there is no substantial, competent evidence to sustain the award in the particulars heretofore enumerated,

The award is set aside.

PHELPS, and DE CONCINI, JJ., concur.

Due to illness, the Chief Justice did not participate in determining this appeal.

STANFORD, Justice (dissenting).

Anton K. Berg was given an award by the Industrial Commission of Arizona because he was totally disabled to work by reason of tuberculosilicosis. He, together with the Industrial Commission and its members were made respondents in this action.

As I see the testimony, Berg was engaged in the State of Arizona in mining,

construction work, road work and dam work. Beginning in the year 1917 he went to work for the United Verde Extension Mining Company, in Jerome, Arizona, where he worked underground in drilling, blasting and hard rock mining from 1917 to 1929. He did highway construction work in the State of Arizona from 1929 to 1936; he worked in mines at Chloride, Arizona, during 1937, 1938 and 1939; he worked for the Tanner Construction Company in this state from 1939 to 1940; and the Atkinson-Kier Company in 1944 and 1942. The record shows that he worked in similar work in Central America from January, 1943 to November, 1943, and in California from April, 1944 to December, 1944; that he worked for several months for the L. E. Dixon Company in Arizona in 1945; that he also worked in the year for the Copper Belt Mining Company in Arizona and the W. E. Orr Construction Company. This generally tells of the work he did.

The record of the Industrial Commission shows the names of places and time worked by respondent Berg during the periods above enumerated. The record and testimony in the case shows that during the ten years immediately preceding the disablement of Berg he was exposed to harmful quantities of silicon dioxide dust for a total period of not less than 1200 work shifts in employment in this state.

The Industrial Commission has itemized the shifts worked, being in addition to other work that he has done, as follows:

|  | "shifts |
|---|---|
| Utah Construction Co. | |
| (4–16–46 to 8–26–46) | 106 |
| L. E. Dixon Company | |
| (9–1945 to 12–1945) | 97 |
| Tennessee Schuylkill Corp. | |
| (1937–1939) | 400 |
| Tanner Construction Co. | |
| (1941–1942) | |
| (1939–1940) | 417 |
| Atkinson-Kier Company | |
| (1941–1942) | 28 |
| Copper Belt Mining Co. | |
| (1945) | 25 to 100 |
| Arizona Magma Mining Co. | |
| (Jan. 1939 through | |
| August of 1937) | App. 200 |
| W. E. Orr Construction Co. | |
| (1945) | 9 |
|  | 1,282" |

Respondent Berg, in part, testified:

"Q. Which was the dusty part of your work, the blowing out of the holes? A. Blowing holes and when you blow the holes you get all the dust, you get the dust from the shovels and from the wagon drills when you drill those holes out and get the steel out.

"Q. I am speaking about your own work. A. Springing holes and blowing holes isn't dusty in itself.

"Q. The dusty operation so far as the duties of a powderman are concerned is when you blow out the holes? A. Blow the holes and when you got the dust from

298

the hammers, you couldn't get away from it."

"Q. Was there much dust? A. Quite a bit, like a fog, a light fog.

"Q. Were you working in it? A. Sure, you had to be right in it.

"Q. Did it bother you any physically? A. Well, I got a sore throat out there, in June I think it was."

"Q. So you usually worked in the dust when you were on shift? A. That is right."

Ernest Jacobs, employed on the same job with Berg, testified that he worked in Arizona as a driller for about fourteen years and said that there was lots of dust on this job; that the dust conditions were bad. Like testimony was given by various other men who were working on the job with Berg.

On December 2, 1946, Drs. W. Warren Watkins, Louis Baldwin and E. R. Kolbe, of the medical department of the Industrial Commission of Arizona, made their report to the commission in the case of Berg, which report, among other things, stated:

"From the history of sufficient exposure to dust, the general condition of the patient and the evidence given by sputum and x-ray examination, it is concluded that this patient has silicosis, of about a stage two, and advanced bilateral cavernous tuberculosis."

We find in the records the following admission by the petitioner:

" * * * at this time we would like to state for the record that we do not question the fact that this applicant is suffering from tuberculsilicosis, nor do we oppose the idea that he is totally disabled under the statutory provisions when total disability is presumed in the case of tuberculsilicosis."

Among the findings of the Industrial Commission are the following:

"3. That the above-named applicant, while employed in the State of Arizona, by the above-named defendant employer, suffered an occupational disease as defined by Section 56-1236, Arizona Code, Annotated 1939, as amended, subsection 35, of said law, to-wit: Silicosis complicated by tuberculosis.

"4. That the said disablement began on the 25th day of August, 1946.

"5. * * *

"6. * * *

"7. That said applicant for a period of 1200 shifts out of the last ten years in the State of Arizona, was exposed to harmful quantities of silicon dioxide ($SiO_2$) dust, and is totally disabled by reason of silicosis.

"8. That the applicant was last exposed to harmful quantities of silicon dioxide ($SiO_2$) dust during a period of sixty days or more while employed by the defendant employer, to-wit: from June 26, 1946 to August 24, 1946; a total of 106½ shifts.

"9. That during the time said applicant was employed by the above-named defendant employer, the wind was generally blowing, causing the air to contain harmful quantities of dust containing silicon dioxide ($SiO_2$) dust.

"10. That during the course of his employment, at least on occasions of sometimes two days a week, the applicant blew out the drill holes with air; that said drill holes would contain powdered rock in fine dust particles, which applicant was exposed to; that in the regular course of his employment, applicant was exposed to fine particles of dust when the drill holes were being blow out by other employees, and which other men, not engaged in similar work, were not exposed to.

"11. That prior to said employment by said employer, applicant had not previously been disabled for work by reason of silicosis or any complications thereof.

"12. That in blowing out holes, it was impossible to escape exposure from fine particles of rock dust."

One of the matters treated in the majority opinion is to the effect that there was no substantial competent evidence that claimant was exposed to harmful quantities of silicon dioxide dust in Arizona for a period of not less than 1200 shifts during the ten year period immediately preceding the disablement. In this respect when competent evidence is the basis for the findings of the Industrial Commission this court must give such findings the consideration that it has always accorded.

We quote from the case of Tooley v. Weisbarth, 66 Ariz. 230, 186 P.2d 638, 640:

" * * * But findings of fact, once made, are entitled to the same treatment on review as those of a trial court and will be presumed correct where evidence is conflicting. * * *"

In Beutler v. Industrial Commission, 67 Ariz. 72, 190 P.2d 918, 919, this court said:

" * * * If there is competent evidence in the record to sustain the action of the Commission it is binding and conclusive on this court."

The findings were supported by substantial competent evidence and the award should be affirmed.