218 P.2d 875

OROSCO v. POARCH et al.

No. 5321.

Supreme Court of Arizona.

June.6, 1950.

Theodore G. McKesson, Thomas P. Riordan, James D. McKesson, Phoenix, for petitioner.

Robert E. Yount, Phoenix, H. S. Mc-Cluskey and Donald J. Morgan, Phoenix, of counsel, for respondent Industrial Commission.

PHELPS, Justice.

On December 6, 1948, applicant was suffering from silico-tuberculosis indicating long exposure to silicon dioxide (SiO2) dust and on that date filed a claim with the Industrial Commission of Arizona for disability benefits under the provisions of the Occupational Disease Disability Law of Arizona, Section 56-1201 et seq. On April 28, 1949, the commission entered its findings and award denying him compensation or medical benefits.

Thereafter, upon petition of applicant, the commission granted a rehearing at which evidence was taken and on December 13, 1949, affirmed its previous finding and award, expressly finding that applicant had not been exposed to harmful quantities of silicon dioxide (SiO2) dust for a total period of not less than twelve hundred

shifts in employment in the state during the ten years immediately preceding his disablement as required under section 56-1213 (a), paragraph 3, of the Arizona Occupational Disease Disability Law.

The matter comes to us on certiorari.

There is no dispute in the evidence that applicant was suffering from silico-tuberculosis at the time the application was filed with the commission nor is there any question but that he has worked in various small mines in excess of twelve hundred shifts in some phase of hard rock mining in Arizona within the ten years immediately preceding his disability.

The sole question, therefore, is: Does the evidence submitted sustain the findings of the commission that applicant was not, during such time, subjected to harmful quantities of silicon dioxide (Si02) dust?

■ The burden was upon applicant to prove that he was exposed to harmful quantities of silicon dioxide (Si02) dust during the period involved. Let us see what the record discloses. We shall quote verbatim from all of the evidence in the transcript of record bearing upon this question. The applicant testified as follows:

"Q. Did you ever have any trouble with dust in any of these mines? A. In some of them.

"Q. What kind of dust was it? A. From the drilling, sometimes they didn't have enough water and before you knew it you had dust in your machine, that is where you get your dust.

"Q. Do you know what kind of rock you were working in? A. Yes, sir, I can tell you everything about the rock.

"Q. What kind of rock was it? A. It was quartz.

"Q. Do you know whether or not quartz contains any silica? A. Yes, sir.

"Q. Do you know whether it contains any silicon dioxide? A. Yes, sir.

"Q. Does it? A. In some cases."

Applicant also testified as follows:

"Q. Is there any dust in drilling with a single jack? A. No, very little dust with a single jack. You can't get no dust in the ditches but it was mining just the same. I was drilling with a single jack.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. What were the conditions at the Monte Cristo Mine with regard to dust? A. It was a little dusty.

"Q. Were you ever in the mine during a blast or shortly after a blast? A. Yes, sir.

"Q. Was there any dust in the mine at that time? A. There is dust, mostly gas not dust, gas from the powder."

And the following is taken from the testimony of the witness Nick Oberan, directed at the geological formation surrounding Wickenburg:

"Q. Do you know anything about the geological strata involved in these mines in that area? A. A little bit.

"Q. What kind of rock is that? A. Mostly quartz and granite, very seldom that you run into decomposed granite, but mostly quartz especially. A small mine operator can't afford to go to anything else but follow the quartz ledge, if we don't get the quartz we don't get no values."

Later, testifying to the Wickenburg ore market operation, crushing ore for small mine operators in the Wickenburg area:

"Q. Would you say that that operation at that ore market was a dusty operation? A. Bad, worse than mining."

The witness R. V. Bouden testified concerning the Bob Groom Mine:

"Q. Do you know what kind of geological formation you were working in? A. Yes, sir.

"Q. What was it? A. The veins consist mostly of quartz and iron ore and other minerals carrying gold and copper."

Mr. J. A. Campbell testifying concerning the Big Spar Mine located in that vicinity stated:

"Q. Do you know what kind of geological formation that mine is located in? A. Decomposed granite and the filling of the vein matter is composed of different minerals.

"Q. Do you know whether or not there is any silica in that ore? A. Oh, yes, there is some silica, not much, two or three per cent maybe.

"Q. Do you know whether or not there is any silicon dioxide dust in that mine? A. We had no dust in the mine when we operated.

"Q. Did you have any kind of air conditioning in that mine? A. I had a pipe and I had the blower and I had the engine to run it with but we never had to have air conditioning, it was so nice and cool in there we didn't have to put it in.

"Q. Did you make any dust count in there to determine whether or not there was? A. There was no dust in there, that brecciated matter and decomposed schist is kind of damp."

Dr. N. H. Morrison, owner of the Monte Cristo Mine, testified:

"Q. Do you know what type of geological strata that mine is in? A. There is a lot of different rocks up there. There is a lot of silica there, yes.

"Q. In your opinion there is silica in that mine? A. Yes, there is a lot of silica.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. Do you know anything about the geological composition of the ground or ore between Wickenburg and Skull Valley? A. No, there is a great deal of granite when you get up around Yarnell and of course there is silica in granite.

"Q. Is there any difference between free silica and silicon dioxide? A. Yes, silica is quartz, rock, and the silicon dioxide is the oxidation of that silica. There is a difference.

"Q. In other words, all silica does not contain silicon dioxide? A. I would say not. I am not a chemist but I would say

not, a great deal of the upper stratas do. If you have oxidation at the surface you will have the silica oxides the rest of the metal and rocks and so on."

Mr. C. J. Murdock, State Mine Inspector, testified as follows:

"Q. Do you recall what the dust conditions were in the Bob Groom Mine at the time you made your inspections there? A. I wouldn't call it good.

"Q. Did you make any dust tests to determine the quantity of particles of dust in that air? A. No, I did not, that was before we had a dust engineer.

"Q. Do you recall what type of strata this mine was in? A. More or less quartz, different rock.

"Q. Were you familiar with the Monte Cristo Mine? A. Yes, as far as inspection was concerned.

"Q. Did you have occasion to make any dust counts in that mine? A. No.

"Q. Would you know whether or not the conditions in that mine produced any dust or silicon dioxide? A. We claim there is dust in any mine, any rock can carry silica or streaks of it. You have no way of telling about the free silica in rock. We have found free silica in the large porphyry mines at Ray and it wasn't supposed to have any. * * *

"Q. Are you familiar with the Wickenburg ore market? A. I am.

"Q. Do you know the process that the ore is put through at that ore market? A. It is crushing and sampling.

"Q. Would you say that such an operation as that would create a hazardous quantity of silicon dioxide dust? A. I would. Any time that you crush ore you get dust and you can't get away from it."

This is all the evidence in the record concerning the presence of silicon dioxide (Si02) dust in the mining operations in which applicant was employed. Assuming that the answer of Mr. Murdock to the question of counsel for applicant concerning the operation at the ore market in Wickenburg had reference to silicon dioxide (Si02) dust at that operation, that testimony only goes to three hundred shifts at the most. Dr. Morrison, owner of the Monte Cristo Mine, freely admits that there was lots of silica in the Monte Cristo ore but he further stated that there is a difference between silica and silicon dioxide (Si02) dust. All quartz according to his testimony consists of silica but silicon dioxide is the result of oxidation of silica and unless the oxidation process has been consummated, silicon dioxide (Si02) dust does not exist. Nowhere in the record is there an unequivocal statement by any witness that silicon dioxide (Si02) dust existed in any of the mines in which applicant worked during the ten years immediately preceding his disablement.

The applicant is a man who has devoted his life to mining in small mining operations in the vicinity of Wickenburg. The fact that applicant is suffering from silico-tuberculosis presents conclusive evi-

dence that at some time he has been exposed to silicon dioxide (SiO2) dust. It is also conclusive so far as the record reveals that he was subjected to that exposure in some of these small mines in which he worked. He is totally disabled. No scientific test has ever been made in any of these small mines concerning the presence or absence of silicon dioxide (SiO2) dust. Many of them are now and have been closed down for years. No miner, however intelligent or precautious he may have been, could have determined from the facilities at his command, whether there did exist in these mines silicon dioxide (SiO2) dust in harmful quantities or any quantity whatsoever. He has presented to the commission and to this court the best evidence available to him to sustain his claim to compensation and yet he has wholly failed to furnish sufficient evidence or any evidence at all of the presence of silicon dioxide (SiO2) dust in any of the mines he has worked within the ten years immediately preceding his disablement unless we can assume, without proof, that the silico-tuberculosis was contracted as a result of such exposure within that period. We believe the findings and award of the commission denying compensation and the decision of this court affirming such award does a great injustice to this applicant. Injustice to individuals will continue to recur until the legislature sees fit to enact a law covering silicosis cases providing that it is only necessary for one to prove exposure to dust while employed in mining operations for not less than twelve hundred shifts during the ten years immediately preceding his disablement and that he is suffering from the disease known as silicosis to warrant the allowance of compensation. It was pointed out in the case of Utah Construction Co. v. Berg, 68 Ariz. 285, 205 P. 2d 367, that there are four distinct types of silicosis recognized by the medical profession, to wit:

(1) the peribronchial-perivascular type,

(2) nodular pneumoconiosis type,

(3) the pockmarking lesion type,

(4) acute silicosis

yet only No. 2 is compensable under the statutes of this state. To place upon a laborer the burden of having laboratory tests made concerning the silicon content of dust in mines (especially small mines) in which he works as the Occupational Disease Disability Law now apparently requires, shocks the conscience of every one connected with its administration. The legislature should and unquestionably will correct this when its attention is called to it.

Under the law as it now exists we have no alternative but to affirm the award of the commission.

LA PRADE, C. J., and UDALL, STANFORD and DE CONCINI, JJ., concurring.