McCarthy, Respondent, vs. Industrial Commission of Wisconsin and others, Defendants, and Sawyer-Goodman Company, Appellant.

*October 15—November 8, 1927.*

*Workmen's compensation: Injury to employee: Whether inguinal hernia was traumatic in origin: Opinion evidence: Weight.*

1. The industrial commission is not bound to accept the opinions of experts as to the cause of an employee's disability which are contrary to its own expert knowledge upon the subject. p. 204.
2. Where the conclusion of the commission relates to a subject of special and expert knowledge, courts should reverse the findings of the commission with great reluctance.    p. 205.
3. Under the evidence the circuit court was not justified in setting aside an order of the commission denying compensation to an employee on the ground that it could not determine from the evidence whether the inguinal hernia from which the employee was suffering was traumatic in origin.    p. 205.

Appeal from a judgment of the circuit court for Dane county: A. G. Zimmerman, Circuit Judge. *Reversed.*

Action by plaintiff to set aside an order of the Industrial Commission denying him compensation for industrial accident. From a judgment setting aside the order of the In-

dustrial Commission the defendant *Sawyer-Goodman Company* brings this appeal.

On the 29th day of May, 1923, the plaintiff was in the employ of the *Sawyer-Goodman Company*. His work was that of scaling logs. While assisting in the breaking of a skidway, a heavy log struck the handle of the cant-hook with which he was lifting on a log, with such force that it knocked him to his hands and knees. He felt a stinging pain in his groin as soon as he stood on his feet. It was severe enough so that he had to sit down for a little while, probably ten or fifteen minutes, after which he resumed his work of scaling. He worked the rest of the day but felt soreness in the region of his groin. He had pain during that night, woke up two or three times, and the next morning discovered what he thought was a rupture. He resumed work the next day, and kept on working until the 1st day of July. He did not notify the company of the accident for about two weeks after the accident. Upon consulting a doctor on the 5th day of July he was informed that he had an inguinal hernia. An operation was recommended, but upon examination it was discovered that he had diabetes, and the operation was postponed. No operation had been had at the time of the hearing.

Dr. Bergland, who treated the plaintiff, testified that in his opinion the hernia was traumatic. He based this opinion upon the history of the case and the fact that the hernia was easily reducible. He testified that "reducibility is not always evidence of a traumatic hernia, but is more or less evidence of a recent hernia."

Dr. A. T. Nadeau was called as a witness on behalf of the employer. He testified that he examined the applicant and found that he had a hernia. He was asked this question by the examiner:

"From your history and what you know of the case, would you say this was a traumatic hernia? *A.* From the history of the case, he did not have any hernia or lump in his

side before that blow, so, therefore, the hernia dates back from the time this log struck his cant-hook and the sudden sharp strain on his body. We have no means of knowing how old the hernia is excepting the history of the development."

The foregoing practically includes all of the medical testimony bearing upon the question of whether the hernia was traumatic in its origin. In its findings the Commission stated that it was unable to conclude from the evidence whether the hernia was of traumatic or other origin, "and it is therefore not warranted in charging the respondents herein, or either of them, with liability for compensation." The circuit court set aside the order of the Industrial Commission denying compensation, on the ground that the evidence permitted no other reasonable inference than that the hernia was of traumatic origin.

For the appellant there was a brief by *Schubring, Ryan, Clarke & Petersen* of Madison, and oral argument by *William Ryan.*

For the respondent there was a brief by *Martin, Martin, Clifford & McHale* and *Clinton McCarthy,* all of Green Bay, and oral argument by *G. F. Clifford.*

For the defendant Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

OWEN, J. The Industrial Commission has filed a brief in this case, in which its position is stated as follows:

"It is common knowledge that, except in such specific cases, hernias are a matter of gradual development to which many things have contributed before eventually coming to the point of disablement. The most common causes are constipation, coughs, and advanced age, or those diseases which produce loss of muscle tone. Falls, abdominal blows, and heavy lifting may have material effect upon the production of the end result. It is one of these latter incidents

McCarthy .v. Sawyer-Goodman Co. 194 Wis. 198.

that is most often given as the producing cause in claims for indemnity under compensation. If a fall or an abdominal blow or a heavy lift in the course of employment is responsible for so sudden and considerable a degree of advancement in the hernial condition as to bring it to the point where it becomes disabling, then there is liability under compensation. If any one of these things is a mere incident and had little, if any, appreciable effect upon the hernial condition, then liability does not attach. The issue is upon the real effect produced by the fall or blow or overlift or strain, as the case may be.

"Any such development of the condition as will render the case compensable must necessarily cause immediate discomfort, at least temporary suspension from work, and outward evidences of pain observable to fellow employees. It will be an occurrence of such consequence as to prompt an employee to speak to his fellow workers and to superiors and otherwise give visible evidence of the fact that something unusual did occur. Where no such lapse from work was present, no such discomfort experienced, no attitude on the part of the employee indicating his thought that anything unusual did occur, his conduct is not such as to corroborate his claim. Any change of condition which does not provoke such symptoms and such actions is insignificant. The fact that he finds a hernial condition later on does not warrant him in concluding that any prior experience was the responsible cause of the condition, and for like reason does not warrant the Commission in finding such to be the fact.

"The rules adhered to by the Commission in judging the cause of hernial conditions are the same as those that are recognized in other compensation jurisdictions. They are not rules in the strict sense. They are a simple application of the requirement that a compensable condition must be established by evidence and not be predicated on purest conjecture. 'Proximate cause' and 'proximate result' are just as essential factors to liability under compensation as at common law. The probability of any direct relationship between an alleged fall or blow or strain sustained in employment and a hernial condition observed later on is not sub-

stantiated by absence of those symptoms and actions that characterize the conduct of an employee in every other injury of like seriousness.   Having in mind the many and varied causes for the development of hernias, the employee whose conduct does not follow the usual corroborative course has nothing upon which to convince himself that something unusual occurred in the course of his employment, sufficient to produce material effect upon his hernial condition.   Much less sufficient is his experience to satisfy others that the hernial protrusion which he later finds had any connection with his labor."

In *Meade v. Wis. M. M. Co.* 168 Wis. 250, 169 N. W. 619, a stronger case was presented in favor of the applicant than is presented by the record in this case.   In that case the employee slipped while working with a bar.   "He had a feeling in his groin as though somebody ran a knife into his side.   He sat down for about five minutes.   It pained him something awful during that time."   When he sat down he was very pale and a cold sweat ran over him.   He was able to work for about two weeks, at which time he was obliged to cease his labors.   He was operated upon, and the doctor who operated testified that the hernia was of traumatic origin, and based his opinion, in part at least, upon his observations made at the time of the operation.   Another physician testified in that case that in his opinion the hernia was not of traumatic origin.   He based his opinion upon an examination made of the applicant about three weeks after the accident, and testified that if the hernia had been acute the applicant could not have continued to work as he did, and further, that traumatic hernia is a very rare thing.   In that case the court referred to the fact that the Industrial Commission had found it necessary in hernia cases "to require definite proof that the hernia was produced by accident; . . . that the accident was such as could produce a hernia; that the hernia appeared immediately after the accident; that it was followed by pain immediately disabling

McCarthy v. Sawyer-Goodman Co. 194 Wis. 198.

the applicant." These requirements were held to be reasonable. It was further held that the evidence in that case justified the conclusion that the hernia did not result from the accident. The only substantial difference that we can discover in a comparison of the records in this and the *Meade Case* is that in the *Meade Case* there was the testimony of the physician that in his opinion the hernia was not of traumatic origin. Unless the absence of this character of testimony in this case compelled the Industrial Commission to find in favor of the applicant, then the *Meade Case* is controlling here.

It appears not only from the statement filed by the Industrial Commission in this case, but from an examination of the Workmen's Compensation Reports, that the Industrial Commission is frequently called upon to deal with hernia cases, and that they are perhaps the most troublesome cases with which the Commission comes in contact. This is due to the fact that inguinal hernia is rarely of traumatic origin, but that it has a gradual development, and its final culmination is frequently, if not generally, due to some strain which can be said to be incidental in its nature. The frequency of these cases has enabled the members of the Industrial Commission to become thoroughly familiar with the nature, development, and progress of the ailment, and they bring to the consideration of such cases a knowledge and experience which enables them to pass most discriminatingly upon the evidence produced. It is scarcely too much to say that they are experts upon the subject. At any rate, none can deny that they are far better qualified to draw proper inferences from the physical facts than those who do not possess the peculiar knowledge of the subject which they have acquired by reason of their experience and contact with hundreds of such cases. As already stated, the evidence of the physical facts in this case does not point as convincingly to traumatic hernia as did the facts in the *Meade Case*. Be-

cause there is no medical testimony here supporting a con-
clusion that the hernia was not of traumatic origin, is the
Commission barred from applying to the evidence their own
expert knowledge upon the subject? "Nonsense clothed in
words of 'learned length' " falling from the lips of an expert
witness does not afford a sufficient basis upon which to sup-
port a judgment. *Bucher v. Wis. Cent. R. Co.* 139 Wis. 597,
120 N. W. 518.

The convincing power of expert testimony depends some-
what upon the knowledge and experience of the one who is
called upon to weigh such testimony.    The untutored are
likely to accept the opinion of an expert at its face value,
while those possessing knowledge upon the subject concern-
ing which he testifies may discount it or entirely disregard it
as unsound.    In this case the trial judge apparently accorded
the testimony of these physicians full faith and value.    But
it does not follow that the Industrial Commission attached
any such weight to their testimony, nor do we think they
were bound to do so.    If the testimony of these witnesses
was contrary to their own expert knowledge upon the sub-
ject they were at liberty to disregard it.    A farmer sitting
on a jury would not be bound by opinion evidence relating
to farming which he knew or believed to be untrue.    Neither
would a pharmacist or mechanic or physician.    Why, then,
should the members of the Industrial Commission be bound
to accept opinions of experts which are contrary to their
own knowledge and experience?    Why constitute expe-
rienced and expert men as fact-finders if their findings of
fact upon expert matters are to be overturned by courts the
personnel of which have neither the knowledge nor experi-
ence of such matters enjoyed by the members of the Indus-
trial Commission?    Of course, where mere physical facts are
involved, judges are as well qualified to weigh the evidence
as are the members of the Industrial Commission.    But

where the conclusion relates to a subject of special or expert knowledge, courts should reverse the findings of the Industrial Commission with far greater reluctance and hesitation.

The conclusion of the Industrial Commission is supported at least by the following considerations: (1) Inguinal hernia is rarely of traumatic origin; (2) it is generally of traumatic culmination; (3) when of traumatic origin the pain is so severe as to disable the subject from work; (4) the applicant continued his work with but a few minutes respite, contrary to the general history of traumatic hernia; (5) he did not notify his employer for two weeks after the accident. In view of these considerations, we think a court possessing a knowledge of and experience with the subject inferior to that of the Industrial Commission is not justified in saying that the Commission acted without or in excess of its powers in denying compensation to the plaintiff. From this it results that the judgment of the circuit court must be reversed, and cause remanded with instructions to affirm the order of the Industrial Commission.

*By the Court.*—So ordered.

CROWNHART, J. (*concurring*). I concur in the result of the decision of the court, but not for the same reasons. The circuit court passed upon the merits of the case and thought the claimant should have been compensated. In that view of the case I agree with the lower court. But the compensation law plainly gives the Industrial Commission jurisdiction to err. Formerly that jurisdiction was lodged with the courts, but the legislature, in passing the workmen's compensation act, in the interest of speedy justice for the working men, sought to limit appeals and protracted litigation. It therefore confined reviews by the courts of the Commission's awards to jurisdictional errors,—where an award is made as the result of fraud, or in case of an entire

failure of evidence to support the award. Looking at the matter in that light, I am of the opinion that the award has some support in the evidence and must be sustained.

However, I am moved to comment on what I think was a mistake of judgment on the part of the Commission. The claimant seems to have brought his case squarely within the compensation act. The Commission, in its brief, says:

"If a fall or an abdominal blow or a heavy lift in the course of employment is responsible for so sudden and considerable a degree of advancement in the hernial condition as to bring it to the point where it becomes disabling, then there is liability under compensation."

There is no dispute but that the claimant was accidentally injured in the course of his employment. He immediately suffered pain, and for a short time was disabled from work. He had no hernia before the accident. After the accident he had a hernia. The accident produced a sudden, violent strain on the abdominal muscles, calculated to propel the intestines through the inguinal canal. The testimony of the physicians representing both the employer and the injured man was to the effect that the hernia was of recent origin and, in their opinion, traumatic. The employer had prompt notice of the accident. Other employees were present at the time of the injury. I do not think traumatic inguinal hernias are so infrequent, as suggested in the opinion. By consulting the public bulletins of the Commission, it is shown that for the year 1923, 174 inguinal hernia cases were compensated, and 221 hernias compensated without specifying the kind; for the year 1925, 318 hernia cases were compensated without specifying the kind; for the year July 1, 1924, to June 30, 1925, the Commission made formal awards granting compensation in 46 hernia cases; and for the year July 1, 1925, to June 30, 1926, in 44 cases the Commission made awards granting compensation. The bulletins show that nearly all awards in contested hernia cases were for inguinal hernias. Mostly all