RICHARDSON, Appellant, vs. INDUSTRIAL COMMISSION and others, Respondents.

*June 6—June 26, 1957.*

For the appellant there was a brief and oral argument by *Dennis B. Danielson* of Eau Claire.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the remaining respondents there was oral argument by *James E. Garvey* of Eau Claire.

MARTIN, C. J.  The only testimony given before the examiner was that of the applicant.  He testified he was a resident of Eau Claire; that for several months prior to his injury he was employed by Klauck Motor Sales of Stanley, Wisconsin, as a salesman of automobiles and electrical appliances; he was paid a salary of $25 per week plus commissions on sales made; that Klauck Motor Sales supplied him with an automobile; that Klauck furnished the gasoline and Richardson paid for the oil.  His work was to travel around the area of Stanley and Eau Claire to develop prospects and make sales for his employer; he was not required to report to the Klauck garage every day and on some days he did

not report there at all, but spent his entire time following up leads and calling on prospects in the area. On occasion he did sales work on the premises of the garage.

On July 31, 1954, Richardson left his home at about eight o'clock in the morning and drove a short distance south of Eau Claire to call on Fred Loomis, with whom he was "dickering" for the sale of a car. Loomis' son was also interested in a car. When he called Loomis was busy sowing rye and "he told me to come back in the evening." After eating his noon meal at home, Richardson went to Stanley, stopped in at the garage about 1 p. m., and then spent the afternoon looking for leads and calling on prospects in Stanley. He returned to the garage for a half hour before he left Stanley between 5:30 and 6 p. m.

Richardson had made arrangements to meet his family for supper at the Crossroads Cafe just south of Eau Claire, and intended to call on Loomis who lived about two miles west of the cafe. While traveling west on Highway 29 from Stanley toward Chippewa Falls he collided with another car at Bateman, about twenty miles from Stanley, sustaining the injuries upon which his claim for compensation is based.

On the above testimony of the applicant the examiner found that Richardson's sole intention and purpose on leaving Stanley was to keep the dinner engagement with his family and concluded that he was performing no service for his employer and his injury did not arise out of his employment. Upon review by the commission the order dismissing plaintiff's application was affirmed and a memorandum filed stating:

"Analysis of the record leaves no doubt in our minds that applicant had no intention to call upon a customer but intended only to go to the Crossroads Cafe to have dinner with his family. We are convinced that he had finished work for the day and had no intention of performing any further service for his employer. His trip, therefore, was a personal one and his injury did not arise out of employment."

We may say at the outset that sec. 102.03 (1) (c), Stats. 1953, does not apply in this case. Richardson's place of employment was not limited to the employer's premises but included all the area around Eau Claire and Stanley. The evidence is that he worked the general Stanley-Eau Claire area, traveling wherever his sales leads required and working whatever hours he deemed necessary. Under these conditions an employee is entitled to the protection of the Workmen's Compensation Act until he returns to his home, unless the evidence shows that he deviated for his own private purposes.

The answer to the question on this appeal—whether Richardson was within the scope of his employment when injured—depends on whether the commission was justified in disregarding his testimony that he intended to call on a customer the evening of the accident.

The attorney general points out that it was the commission's duty to deny compensation if the evidence warranted doubt that Richardson was performing service for his employer when he was injured. The rule is stated as follows in *Beem v. Industrial Comm.* (1943), 244 Wis. 334, 337, 12 N. W. (2d) 42:

" 'If the evidence before the commission was such as to raise in the minds of the commission a legitimate doubt as to the existence of facts essential to compensation, it would be the duty of the commission to deny compensation, on the ground that the applicant did not sustain the burden of proving to the satisfaction of the commission that the facts were as he claimed them to be.' "

This does not mean, however, that any doubt is a legitimate doubt so long as the commission chooses to entertain it. While the applicant has the burden to prove his facts to the satisfaction of the commission, the rule does not permit the commission to exercise its judgment arbitrarily and capriciously. With respect to Richardson's intention to

visit Loomis on business after the family supper, he testified in detail: He had previously sold Loomis cars and appliances; he visited Loomis in the morning to "dicker" with him about cars that he and his son were interested in buying; Loomis was sowing rye, was too busy to talk to him then and asked him to return in the evening. This was the testimony which the commission considered incredible. We cannot so consider it. It would have been a simple matter to call upon Loomis for verification or denial of it. There must be in the testimony some inherent inconsistency before the commission is warranted in entertaining a legitimate doubt. It cannot rely solely upon its cultivated intuition.

In *Molinaro v. Industrial Comm.* (1956), 273 Wis. 129, 76 N. W. (2d) 547, where we reiterated the rule that the commission is the sole judge of the credibility of witnesses, Mrs. Molinaro's testimony regarding her injury, which the commission found incredible, was strikingly inconsistent with facts testified to by the doctor with respect to the usual symptomatic concomitants of the type of injury she sustained.

No part of Richardson's testimony was brought into doubt by that of other witnesses; his was the only testimony in the record. Nor is his statement that he intended to call on Loomis in the evening inconsistent with any of the other facts to which he testified or with the exercise of common sense. He was a car salesman; his hours of work were such as he alone determined; his employment involved traveling and selling away from the premises of his employer. What is incredible about a car salesman visiting a prospect in the evening? The fact that he sometimes made sales on the employer's premises does not make his testimony incredible. Nor does the fact that he visited the garage before leaving Stanley on the day of the accident compel the conclusion that he was through with his work when he left the employer's premises. Richardson admitted he was going to meet his family for dinner, but he testified there was nothing of a

festive nature about the anticipated dinner. Would the commission have found it easier to believe Richardson if he had testified he intended to eat alone, or at home?

There is nothing in the record from which a legitimate doubt could arise, and the facts show that the trip Richardson was making at the time of his accident had a dual purpose, the private one of meeting his family for supper at the cafe and the business errand of visiting Loomis later. As stated in *Voswinkel v. Industrial Comm.* (1939), 229 Wis. 589, 598, 282 N. W. 62, adopting the language of Mr. Judge CARDOZO in *Matter of Marks v. Gray* (1929), 251 N. Y. 90, 167 N. E. 181:

" 'We do not say that the service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled. . . . The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. . . . If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose though the business errand was undone, the travel is then personal, and personal the risk.' "

Respondent argues that we virtually overruled the *Voswinkel Case* in *Bowen v. Industrial Comm.* (1941), 239 Wis. 306, 1 N. W. (2d) 77. A reading of the *Bowen Case* will not bear out that statement. And the facts in the *Bowen Case* were very different from those before us now. The actions of the applicant there belied the intention of calling on a customer and his testimony regarding the intention to do so, unlike that of Richardson in this case, was vague and evasive. Richardson's testimony is straightforward and unequivocal, and recites his intention to do something entirely

natural and consistent with the kind of employment he was engaged in. The only similarity in this case and the *Bowen Case* is that both applicants were automobile salesmen.

While no argument is made to the contrary, it may be noted that, in combining his personal mission with his business appointment, Richardson did not deviate. The route which he traveled was the route he normally would travel to visit Loomis, whether he stopped for supper with his family on the way or not.

The commission should have determined that Richardson was in the course of his employment when he was injured and allowed compensation.

*By the Court.*—Judgment reversed, and cause remanded for determination by the commission of the applicant's period of disability and award.