Glenn A. LEIST, Plaintiff-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Wisconsin
Department of Employee Trust Funds and City of
Marinette, Defendants-Respondents-Petitioners.

Supreme Court

*No. 92–2939–FT. Oral argument February 2, 1994.—Decided
May 12, 1994.*

(Also reported in 515 N.W.2d 268.)

For the defendants-respondents-petitioners there were combined briefs by *Jennifer Sloan Lattis,* assis-

tant attorney general, *James E. Doyle,* attorney general and *Bruce B. Deadman* and *Everson, Whitney,* *Everson & Brehm, S.C.* and oral argument by *Jennifer S. Lattis,* assistant attorney general and *Bruce B. Deadman.*

For the plaintiff-appellant there was a brief by *Keary W. Bilka* and *Dewane, Dewane, Kummer & Lambert,* Manitowoc and oral argument by *Patrick A. Dewane, Jr.*

WILLIAM A. BABLITCH, J.   The issue on review is whether there is sufficient evidence in the record to sustain the Labor and Industry Review Commission's (LIRC) denial of disability benefits to Glenn Leist (Leist). Leist claims that the evidence he presented at the hearing before the Administrative Law Judge (ALJ), which included his own testimony and the expert medical opinion of his surgeon, was uncontroverted and established that his herniated disc was caused by a work-related incident in 1985 entitling him to disability benefits. LIRC contends that Leist's ability to work on a regular basis and participate in physical activities, such as weightlifting, since 1985 raises a legitimate doubt as to whether his herniated disc was caused by the work incident in 1985. The court of appeals held that LIRC erred in denying benefits and concluded that LIRC had to produce countervailing expert testimony to establish a legitimate doubt with regard to the cause of Leist's herniated disc. We agree with the court of appeals that LIRC erred in denying benefits because we find no evidence in the record which would raise a legitimate doubt as to whether Leist's herniated disc was caused by the work incident in 1985. We do not agree with the court of

453

appeals, however, that LIRC was required to produce countervailing expert testimony to establish a legitimate doubt on the issue of causation. Because the court of appeals' ultimate result was correct, we affirm.

The facts are undisputed. On July 2, 1985, while acting as a police officer/investigator for the city of Marinette, Leist tackled a large man who was attempting to flee from Leist and other police officers. After twisting the man and taking him to the ground in a wrestling take-down motion, Leist handcuffed the man and, with the assistance of other officers, carried him to a waiting police car.

Leist testified that immediately following this incident he felt stiffness in his back. He continued his shift that day, however, and it was not until two or three days later, when the pain was unbearable, that he sought chiropractic care from Dr. Cukin. Leist testified that he continued chiropractic treatment for approximately two weeks until he felt he could adequately move around. Leist did not receive chiropractic care again for his back until May 12, 1987 when he commenced treatment with Dr. Schuelke. In November 1985, however, a neck injury from weightlifting caused Leist to seek treatment at an emergency room. Leist made no mention of his back problems during this visit.

Leist stated that during the period between 1985 and 1987 he felt continuous back pain which caused him to have problems sleeping, sitting for long periods of time, and wearing a gun belt on his hip. He missed work during this time for periods of 1-2 days each and was forced to curtail certain recreational activities. For example, Leist altered his normal weight training because his pain no longer allowed him to do squats, put weights on his shoulders or do any exercise in which he would have to bend down. He testified, how-

ever, that he was still able to coach football and play golf and basketball.

In August of 1988, after driving considerable distances to visit a sick brother, Leist began to experience numbness and pain in his leg and foot. Fearing dropfoot, Leist contacted Dr. Gruesen, an orthopedic M.D. who initially treated him with physical therapy. After the conservative treatment proved unsuccessful, Dr. Gruesen performed a lumbar laminectomy and disc removal for a herniated disc. Leist is permanently partially disabled as a result of the herniated disc and is retired from the police force, an action consistent with the recommendation of Dr. Gruesen.

Leist applied for disability benefits under sec. 40.65, Stats., and was found ineligible by the Department of Employe Trust Funds. At the appeal hearing for benefits, Leist testified as to the 1985 work incident, his subsequent continuous back pain and his herniated disc. In support of his claim that his herniated disc resulted from the work incident in 1985, Leist submitted the expert medical opinion of Dr. Gruesen, the physician who removed his herniated disc. Dr. Gruesen's opinion was submitted at the disability hearing by way of written report; he was not compelled to be present for purposes of cross-examination.

Dr. Gruesen submitted a "Duty Disability Medical Report" (Disability Report) provided by the Wisconsin Retirement System (WRS). In addition to the standard informational questions regarding the employee's name, address, etc., he was asked several questions with regard to Leist's alleged work accident, Leist's physical injury and whether Leist's injury was caused by the work accident or by a preexisting condition. Dr. Gruesen clearly stated in the Disability Report and in a

letter attached to the report his belief that the 1985 work incident caused Leist's herniated disc and Leist's resulting permanent partial disability.

The ALJ rejected Dr. Gruesen's report, however, because he felt Dr. Gruesen did not persuasively explain his conclusion in light of the lack of physical symptoms consistent with a herniated disc and Leist's testimony that he was able to continue participating in physical activities. The ALJ concluded that the inherent inconsistency between Dr. Gruesen's opinion and Leist's testimony raised a legitimate doubt as to whether the herniated disc was caused by the 1985 work incident. He denied benefits.

On review, LIRC concluded that benefits were appropriately denied. Like the ALJ, LIRC found Dr. Gruesen's report and Leist's claim of back pain inconsistent with Leist's physical lifestyle. Additionally, LIRC found suspect Leist's failure to mention his back pain when he sought treatment for a neck injury in 1985. Finally, LIRC stated:

> The fact that the applicant could continue to lift heavy weights on a regular basis for an extended period as well as perform his regular work responsibilities, including overtime, and perform other recreational activities, tends to undercut the credibility of his contention that his back pain persisted throughout the intervening period between 1985 and 1988. This is also supported by the fact that the applicant went almost 18 months without the need for treatment following his initial treatment with Dr. Cukin. Based on all the evidence in the record there is a legitimate doubt that the applicant's herniated disc in November 1988 was caused by his work injury in 1985.

On petition for review the circuit court affirmed the decision by LIRC and dismissed Leist's complaint. The court of appeals reversed. In an unpublished opinion, the court stated that the question of whether Leist could have suffered from a herniated disc and still worked, avoided treatment, and participated in recreational activities, required medical expertise. Since Dr. Gruesen's testimony was never discredited by countervailing expert medical opinion, the evidence in the record was unrefuted and thus insufficient to raise a legitimate doubt as to whether the 1985 work incident caused his herniated disc.

The sole issue we are confronted with is whether LIRC properly denied benefits to Leist. In reviewing LIRC's decision we must determine whether there is sufficient evidence in the record to support LIRC's denial of disability benefits. *Erickson v. ILHR Department,* 49 Wis. 2d 114, 118, 181 N.W.2d 495 (1970). It is "an elementary principle" that the claimant has the burden of proving beyond a legitimate doubt all the facts essential to the recovery of compensation. *Id.* It is LIRC's duty to deny benefits if it finds that a legitimate doubt exists regarding the facts necessary to establish a claim. *Id.* at 118. If there is credible evidence to support LIRC's denial, we will not upset it on appeal. *Id.* We have cautioned, however, that:

> This does not mean . . . that any doubt is a legitimate doubt so long as the commission chooses to entertain it . . . . [T]he rule does not permit the commission to exercise its judgment arbitrarily and capriciously . . . .. There must be in the testimony some inherent inconsistency before the commission is warranted in entertaining a legitimate doubt. *It cannot rely solely upon its cultivated intuition. Rich-*

457

*ardson v. Industrial Comm.,* 1 Wis. 2d 393, 396-97, 84 N.W.2d 98 (1957) (emphasis added).

If the facts are undisputed and only one reasonable inference can be drawn from the facts and that inference is contrary to the conclusion drawn by LIRC, we must overrule LIRC. *Detter v. ILHR Department,* 40 Wis. 2d 284, 287-88, 161 N.W.2d 873 (1968).

The facts are undisputed. Leist testified that he injured his back in 1985 while he was on duty as a police officer/investigator for the City of Marinette, and because of the injury he missed work and was forced to curtail certain physical activities. In 1988, Dr. Gruesen diagnosed him with a herniated disc resulting from the 1985 work incident. There are no facts in the record to challenge the veracity of Leist's testimony or the accuracy of Dr. Gruesen's opinion. LIRC concedes this lack of countervailing evidence. It asserts, however, that there is an inherent inconsistency in the unrefuted medical opinion of Dr. Gruesen and the testimony of Leist. LIRC claims that Leist's ability to continue working after the accident, to go for long periods without chiropractic care, and to engage in recreational activities such as golf, basketball, and weightlifting, discredits the conclusion of Dr. Gruesen that the 1985 incident resulted in a herniated disc. LIRC asserts that Dr. Gruesen based his opinion simply on Leist's own recital of his back injury in 1985, and that Dr. Gruesen's report does not indicate how a person suffering from a herniated disc could engage in such activities. From this, LIRC concludes that Dr. Gruesen diagnosed Leist without possessing all of the relevant information. Further, LIRC finds incredible Leist's testimony that he suffered constant back pain during the three years after the work incident in light of his ability to continue physical activities. LIRC claims that

together, these inconsistencies raise a legitimate doubt as to whether the incident in 1985 caused the herniated disc. We do not agree. LIRC's conclusion is based on its own intuition and is not supported by the evidence in the record.

■ The record indicates that Dr. Gruesen clearly expressed his belief that Leist's work injury in 1985 caused his herniated disc. His reports were received into evidence without objection and thus are prima facie evidence of the matter contained therein. *Erickson,* 49 Wis. 2d at 126. In rejecting Dr. Gruesen's opinion, LIRC cited *McCarthy v. Sawyer-Goodman Co.,* 194 Wis. 198, 204, 215 N.W. 824 (1927), for the proposition that it has the ability to weight the credibility of medical opinions and reject them based solely upon its own judgment. In *McCarthy,* the court stated that the Industrial Commission could reject expert opinions even though there was no countervailing expert evidence.

*McCarthy* is easily distinguishable. In this case, LIRC rejected Dr. Gruesen's medical opinion on the basis that Dr. Gruesen failed to explain persuasively how Leist could have suffered from a herniated disc and continued working and recreating. This, LIRC concluded, indicated that Leist did not provide Dr. Gruesen with all relevant information. LIRC reached this conclusion without providing any evidence which would indicate that Leist could not have suffered from a herniated disc and still have worked and participated in recreational activities. The only evidence available to LIRC was Leist's unrefuted testimony and the unrefuted expert medical opinion of Dr. Gruesen.

In *McCarthy,* the injury at issue was an inguinal hernia, the cause of which is well known in the compen-

sation field. Further, in *McCarthy,* the court recited verbatim portions of the brief of the commission in which the commission set forth a detailed description of inguinal hernias, their causes, and their resulting physical effects. *Id.* at 200-02. The court then stated. that the commission possessed a certain expertise with regard to inguinal hernias and thus had the ability to judge unrefuted medical testimony. *Id.* at 202. Such expertise was clearly not evinced in LIRC's memorandum opinion in this case.

Additionally, since *McCarthy,* we have stated that LIRC cannot reject a medical opinion unless there is something in the record to support its rejection. *Erickson,* 49 Wis. 2d 114. In *Erickson,* we reversed LIRC's denial of compensation. We did so on the basis that the evidence in the record did not support LIRC's conclusion that the applicant's herniated disc was caused by something other than the disputed work incident. Although the record in *Erickson* contained evidence which impeached that of the applicant, and which suggested that the applicant had a pre-existing condition, we emphasized that "[t]here was no medical testimony that the herniation was caused by anything other than the incident which Erickson described as occurring at work." *Id.* at 126. *See also Detter,* 40 Wis. 2d 284 (refusing to sustain the Department's findings because they were contrary to the opinions of all the medical witnesses). Similarly, there is nothing in the record before us to support LIRC's belief that Leist's herniated disc was caused by something other than the 1985 work incident.

LIRC's contention that Dr. Gruesen failed to explain his diagnosis does not persuade us that he did not possess the necessary information for such diagnosis. Dr. Gruesen was never required to do any more

than simply state his diagnosis. The Disability Report required from Dr. Gruesen by the WRS did not ask for explanation beyond the doctor's ultimate determination of causation. Further, Dr. Gruesen was never called to testify and thus he was never asked on cross-exam what factors he considered in diagnosing Leist's injury. Finally, Leist was never questioned on cross-exam with respect to what information he provided to Dr. Gruesen during his treatments. Any determination by LIRC that Dr. Gruesen's conclusion was based on incomplete information is pure conjecture.

In order to reject both Leist's testimony and Dr. Gruesen's medical opinion, there had to be some evidence which LIRC could point to that raises legitimate doubt as to the veracity of Leist's testimony or as to whether someone suffering from a herniated disc could engage in the activities recited by Leist. The only reasonable inference that can be drawn from the undisputed facts as they now stand is that Leist's injury in 1985 caused his herniated disc. On this basis we are required to overrule LIRC's denial of benefits.

We do not go as far as the court of appeals, however, and require LIRC to provide countervailing medical expert opinions to support a legitimate doubt. Dr. Gruesen could have been called to the stand for cross-examination to determine whether his conclusion would have been the same in light of Leist's activities after the 1985 incident. *See Richardson,* 1 Wis. 2d at 397 (stating that the commission could have called the applicant's principle witness to verify the applicant's testimony). Leist could have been questioned about what information he provided to Dr. Gruesen. Or, LIRC could have cited to medical text to support its conclusion that someone with a herniated disc would

461

exhibit different symptoms and behavior. LIRC did none of these.

Rather, LIRC relied on its own "cultivated intuition" to come to the conclusion that Leist could not have suffered from a herniated disc and still worked and participated in physical activities. We have stated that such reliance is misplaced. *See id.* at 396. LIRC's decision to deny benefits must be grounded in a reasoned analysis and supported by credible evidence. At the very least, there must be some evidence in the record to support it. Because the record contains no evidence to support LIRC's denial, we must affirm the court of appeals' decision to reverse LIRC and remand for entry of a judgment approving Leist's claim.

*By the Court.*—The decision of the court of appeals is affirmed.