¶ 98.
ANN WALSH BRADLEY, J.
(dissenting). There is a reason that the court of appeals issued an *616 unpublished decision here. And it likely is the messy record, which certainly does not represent LIRC's finest hour.
¶ 99. There is one, and only one, LIRC decision that was ever issued in this case. It is dated February 23, 2015, and it is the decision we review today. DeBoer Transp., Inc. v. Swenson, 2011 WI 64, ¶ 29, 335 Wis. 2d 599, 804 N.W.2d 658 ("When reviewing a worker's compensation claim, we review LIRC's decision, not the decisions of the circuit court or court of appeals."); see also Stoughton Trailers, Inc. v. Labor and Indus. Review Comm'n, 2007 WI 105, ¶ 26, 303 Wis. 2d 514, 735 N.W2d 477.
¶ 100. The majority has forthrightly acknowledged that we owe no deference to LIRC's conclusion of law set forth in that decision because, as even LIRC has now confessed, its conclusion is clearly erroneous. Majority op., ¶ 16. Likewise, the majority has acknowledged that the issue it decides today was never addressed by the Commission because of "its mistaken belief that Ms. Flug had suffered no compensable injury at all." Id.
f 101. So what is this case doing here?
f 102. The problem, of course, arises from LIRC's February 23, 2015, decision where it misstated or misunderstood the essential conclusion of law it was supposed to be reviewing. Rather than issuing an order modifying the Feb 23, 2015, decision or issuing a new decision from which appeal rights attend,[1] appellate counsel for LIRC attempts to change horses in midstream.
*617 ¶ 103. The Department of Justice, representing LIRC on appeal, now argues that although LIRC misstated the only conclusion of law it was supposed to be reviewing, such an impediment presents no obstacle to our review because this error was "inconsequential." It contends that because LIRC adopted the ALJ's findings of fact and conclusions of law in full, that this court is bound by those findings of fact.
f 104. However, in its February 23, 2015, decision, LIRC expressed one important caveat concerning findings of fact that excludes any potential for reliance on Dr. Soriano's report — a report relied upon in the majority opinion — the ALJ "did not adopt the findings of Dr. Soriano." Flug v. Wal Mart Assocs., Inc., WCD No. 201300610 (LIRC, Feb. 23, 2015). Consequently, LIRC also did not adopt those findings.
¶ 105. Additionally, appellate counsel's argument flies in the face of well-established precedent on administrative agency review. Counsel is trying to do now what LIRC did not do. However, appellate counsel is stuck with the facts of the case, which consist of a clearly erroneous February 23, 2015, LIRC decision. "[T]his court cannot accept appellate counsel's post hoc rationalization for agency action. If an agency's order is upheld, it must be on the same basis articulated in the order by the agency itself." Illinois v. United States, 666 F.2d 1066, 1077 (7th Cir. 1981) (citing Fed. Power Comm'n v. Texaco, Inc., 417 U.S. 380, 397, 94 S. Ct. 2315 (1974); Burlington Truck Lines v. United States, 371 U.S. 156, 168-69, 83 S. Ct. 239 (1962)). See also Bagdonas v. Dep't of Treasury, 93 F.3d 422, 426 (7th *618 Cir. 1996) ("It is, of course, well settled that courts cannot accept counsel's post hoc rationalization for agency action.").
¶ 106. Rather than acknowledge and address the procedural morass into which this court has waded, the majority skirts the issue, contending that it must accept LIRC's findings of facts: "the Commission has already found and we must accept [the findings]." Majority op., ¶ 34.
f 107. What factual finding is there that the majority feels so enslaved to uphold?
¶ 108. It cannot be any factual finding based on Dr. Soriano's report because as stated above, the LIRC decision specifically observed that it did not adopt those findings.
¶ 109. It cannot be any of the asserted factual findings relied upon by the majority because they do not exist. For example, the majority asserts that the ALJ and the Commission specifically found that "the surgery didn't treat Ms. Flug's compensable injury." Majority op., ¶ 23. Likewise, the majority contends that LIRC made a factual finding about the object of the surgery: "we must accept" the Commission's factual finding that the "object of Ms. Flug's surgery was not her compensable injury, but her pre-existing condition." Majority op., f 34.
¶ 110. Attached to this writing are the findings of fact of the ALJ as well as the February 23, 2015, decision of LIRC. As the reader will be able to observe, neither the ALJ nor LIRC made such findings.
¶ 111. The majority uses the clearly erroneous LIRC decision and nonexistent findings of fact as a springboard to avoid the real issue in this case: whether the event of February 14, 2013, aggra *619 vated and accelerated beyond normal progression a progressively deteriorating condition. In doing so, the majority makes errors in both what it says and what it fails to say.
¶ 112. Contrary to the majority, I would remand this case to LIRC for a new hearing so that it can weigh the competing medical opinions and then, based on those opinions, issue findings of fact and a conclusion of law that is not clearly erroneous.[2]
Accordingly, I respectfully dissent.
⅜ — I
¶ 113. This case started out as a somewhat routine worker's compensation case. Ms. Flug has a conceded work injury of February 14, 2013, which she sustained while repeatedly raising her right arm to scan boxes at Walmart. She initially treated with her primary care physician, who referred her to an occupational specialist, Dr. Andrew Floren.
¶ 114. After a two month period of treatment, Dr. Floren referred Ms. Flug for an evaluation by a neurosurgeon, Dr. Eduardo Perez. He found that she had a degenerative disc disease and that a discectomy and fusion was needed at two levels in the cervical spine. *620 Dr. Perez recommended that she have surgery. He "discussed all these findings with Ms. Flug," and "entered into an informed consent discussion regarding anterior cervical discectomy with fusion/fixation at the C5-6, C6-7 levels."
¶ 115. The surgery that Ms. Flug underwent on June 4, 2013, was apparently successful. Under worker's compensation law, this particular procedure is a scheduled injury, which means a pre-determined minimum amount of disability attributable to the limitations that arise from the nature of the surgery itself.
¶ 116. In a follow up exam, Ms. Flug reported that she "was doing excellent" and felt almost 100 percent better. That's the good news for Ms. Flug. Now the bad news.
¶ 117. After Ms. Flug underwent surgery, the worker's compensation carrier hired Dr. Morris So-riano to do an independent medical exam. He never met with Ms. Flug, but upon a review of her records, filed a report one year after the injury and 9 months after the surgery, opining that the February 14, 2013, event did not aggravate beyond normal progression her pre-existing spinal condition.
¶ 118. On the other hand, Dr. Floren opined that it did. He stated that he "strongly disagree [d]" with Dr. Soriano's statement, observing that "[t]he patient's history, clinical examination, and radiologic studies all support her need of surgery; which decision was also shown appropriate by her response to that surgery."
f 119. Competing medical opinions in worker's compensation cases are standard fare. Ms. Flug does not contend that the event of February 14, 2013, caused her degenerative spinal condition. Of course it did not. Nor does she assert that the event simply aggravated her spinal condition, because a mere ag *621 gravation of a pre-existing condition is insufficient to be compensable under worker's compensation law. See Lewellyn v. Indus. Comm'n, 38 Wis. 2d 43, 59, 155 N.W.2d 678 (1968). The aggravation and acceleration beyond normal progression of a progressively deteriorating condition, however, is compensable and that was the basis of her claim before LIRC. Id.
¶ 120. At the administrative hearing, the case was presented as a battle between written expert medical opinions. One determined that the February 14, 2013, injury aggravated and accelerated beyond normal progression the pre-existing condition and the other concluded that it did not.
¶ 121. The ALJ's decision set forth the information provided in the written reports of both Dr. Floren and Dr. Soriano, however, it relied on neither. As the LIRC decision explains, the ALJ's decision is not based on the findings of Dr. Soriano. And it certainly is not based on Dr. Floren's opinion because it is contrary to it.
f 122. If the ALJ's decision was based on neither the medical opinion of Dr. Floren nor on that of Dr. Soriano, then on what medical expert opinion did the ALJ base its conclusion? Apparently, the ALJ engaged in its own sojourn into the medical records and determined that no additional compensation was due.
1 — { H-l
¶ 123. Having set forth the facts, I turn to address both what the majority opinion has erroneously stated and what of import it has failed to state.
*622 ¶ 124. From the outset, the majority gets the facts wrong.[3] It states that Ms. Flug "underwent surgery in the belief it was necessary to treat her work-related soft-tissue strain." Majority op., ¶ 1.
• The majority is incorrect. Ms. Flug did not undergo surgery because she believed it necessary to treat a strain. The record reflects that prior to recommending surgery, Ms. Flug's surgeon, Dr. Perez, diagnosed Ms. Flug with "right-sided C7 radiculopathy associated with C6-7 disk osteophyte complex and degenerative disk disease at the C5-6 level." Dr. Perez "discussed all these findings with Ms. Flug," and "entered into an informed consent discussion regarding anterior cervical discectomy with fusion/fixation at the C5-6, C6-7 levels."
f 125. The majority again errs when it contends that the ALJ and the Commission specifically found that "the surgery didn't treat Ms. Flug's compensable injury."[4] Majority op., ¶ 23.
• No such finding exists.
*623 ¶ 126. Likewise, the majority asserts that we must accept the Commission's factual finding that the "object of Ms. Flug's surgery was not her compensable injury." Majority op., ¶ 34.
• No such finding exists.
¶ 127. The majority further asserts that Ms. Flug's argument is beyond its reach, because she "does not assert the findings of fact are the result of fraud, or that the Commission acted outside of its powers." Majority op., f 23.
• Ms. Flug has consistently argued that the Commission acted outside of its powers. In her appeal to the circuit court she argued that "LIRC acted without and in excess of its powers as described in Wis. Stat. § 102.23." She continued this argument in the court of appeals, which explained that "Flug argues the Commission acted in excess of its powers in three respects." Flug v. Labor & Indus. Review Comm'n, No. 2015AP1989, ¶ 24, unpublished slip op. (Wis. Ct. App. June 21, 2016).
• The majority contradicts itself when it asserts that Flug does not argue here that LIRC acted in excess of its powers. What does "acted in excess of its powers" means in the context of worker's compensation? It is well-settled that "when a decision by LIRC is not supported by credible and substantial evidence, the decision is in excess of LIRC's authority." Xcel Energy Serv. Inc., v. Labor and Indus. Review Comn'n, 2013 WI 64, ¶ 55, 349 Wis. 2d 234, 833 N.W.2d 665.
• And yet, that is precisely what the majority acknowledges is advanced here. The majority describes Ms. Flug's arguments as "a continua *624 tion of the argument Ms. Flug made in the court of appeals, where she unequivocally stated she " 'sustained a compensable injury and .. . underwent surgery for a compensable injury.1 Ms. Flug maintained this position even through oral argument here." The basis of Ms. Flug's argument is that LIRC's decision was not supported by the relevant evidence of record: "She says the relevant medical testimony establishes that the surgery for the injury was reasonable and necessary" and that "her surgery was, in fact, for a compensable injury." Majority op., ¶¶[ 20, 23.
¶ 128. Attempting to explain the reasoning of LIRC and the court of appeals, the majority offers that "both the Commission and the court of appeals base their competing analyses on the shared understanding that Ms. Flug's surgery had nothing to do with her compensable injury." Majority op., ¶ 20.
• The Commission could not have based its analysis on the understanding that her surgery had nothing to do with her compensable injury because it concluded that she had no compensable injury.
• The court of appeals never determined whether Ms. Flug's surgery was related to her compensable injury. Instead, as the majority earlier acknowledged the court of appeals didn't need to decide "whether the invasive procedure was actually directed at a compensable injury, so long as the employee had a good faith belief that it was." Majority op., ¶ 19.
¶ 129. Having set forth some of the majority's errors in what it says, I address next what it fails to say. It is only by relying on some of these errors that *625 the majority is able to remain silent, refraining from addressing Ms. Flug's essential argument.
f 130. Although the majority acknowledges that Ms. Flug's true argument is that her surgery was necessitated by the February 14, 2013, event because it aggravated and accelerated beyond normal progression a progressively deteriorating condition, it insists that it cannot discuss it. The majority contends that it is precluded from addressing Ms. Flug's argument regarding the nature of her injury because of nonexistent findings of fact. Majority op., ¶ 23 ("Thus, because the Commission eliminated the factual predicate for Ms. Flug's argument, we would not be able to engage it unless we first rejected the Commission's finding on this point."). It declares that "Ms. Flug's argument [is] beyond our reach." Id.
¶ 131. The majority is likewise silent about the extent of Ms. Flug's disability. It emphasizes in its recitation of facts that at a one month post surgery appointment Ms. Flug stated that "she was doing 'excellent' and feeling 'almost 100 [percent]'". Majority op., ¶ 4. The picture that the majority paints makes the reader wonder whether Ms. Flug has any disability whatsoever. Nowhere in the majority opinion is the reader advised that the surgery causes permanent limitations. The worker's compensation administrative rules recognize that a minimum disability for each level of a discectomy/fusion is 10 percent permanent partial disability.[5] Ms. Flug had procedures at two levels of her cervical spine.
*626 ¶ 132. Finally, the majority says nothing about that part of LIRC's February 23, 2015, decision where it excluded any potential for reliance on Dr. Soriano's report. The majority relies on the report despite LIRC's determination that the ALJ "did not adopt the findings of Dr. Soriano." Flug v. Wal Mart Assocs., Inc., WCD No. 201300610 (LIRC, Feb. 23, 2015).
¶ 133. In sum, because the February 23, 2015, decision of LIRC is clearly erroneous and not supported by any findings of fact, I would remand this case to LIRC for a new hearing, providing an opportunity to weigh the competing medical opinions and then, based on those opinions, issue new findings of fact and a conclusion of law that is not clearly erroneous.
¶ 134. Accordingly, I respectfully dissent.
¶ 135. I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.
*627 STATE OF WISCONSIN department of workforce development WORKER'S COMPENSATION DIVISION P.O.BOX 7901 - MAOiSON, WISCONSIN 63707 (60S) 266-1340
2013-008010
TRACIE L PLUG
528 W CEDAR ST
CHIPPEWA FALLS Wl 54720
. Applicant,
vs. ‘ PLEASE SEE ENCLOSURE
WAL-MART-ASSOCIATES INC
2786 COMMERCIAL BLVD
CHIPPEWA FALLS Wi 54729-6031
• Respondent,
NEW HAMPSHIRE INSURANCE CO
C/O CLAIMS MANAGEMENT INC
PO BOX 1288
SENTONVILLS AR 72712-1283
Insurance Carrier.
[[Image here]]
A hearing was held In Rice Lake, Wisconsin on March 10,2014.
APPEARANCES: The Applicant, In Person and by Attorney Jeffrey • J. Ktemp; the Respondents by Attorney Richard 0, . Dupiessie.
Conceded ware jurisdictional facts and an average weekly wage of §67.4.00. At issue was whether the applicant sustained an injury on February 14,2013, arising out of and occurring whilo performing services growing out of and Incidental to her employment with the employer, respondent. If causation is found the further issues presented are the naturo and extent of disability residing from the injury and the respondents' liability for certain medical exponses.
A.App. 1ÍSS
[[Image here]]
*628 2
Upon the Issues the Administrative Law Judge makes the following:
D 1 N G£ OF F&CT
The applicant, date of birth October 21,1970, worked as a department store retail supervisor for the employer. On February 14, 2013, she was assigned to do price changes utilising a handheld scanning device. She testified that tills required her scan Hems on racks above her head and as she was lowering the scanner she felt the sudden onset of pain in her neck radiating down her right arm. She sought treatment on Fabruaiy20,2013 from Dr. Sabina Monssctfo, complaining of neck and shoulder pain. An x-ray examination revealed a loss of disk space at C5 ánb C6 with some anterior spurring but no evidence of fracture. Dr. Morissetie diagnosed right arm and shoulder pain with a possible relation to the cervical spine. Conservative care was proscribed inefudíng a course of physical therapy. She was referred to an occupational health specialist, Dr. Andrew Floren; Dr. Floren examined the applicant on March 6,2013, noted the condition was resolving with conservative care and reported he saw no sign of cervical involvement. On fo'Ilow-up on March 22,2013 Dr. Floren diagnosed neck and upper back pain, siowiy resolving as well as right shoulder pain, minimally resolving. However, after examination on April 2,2013, Dr. Floren noted the right shoulder pain was not resolving and the, applicant had . persisitenf right hand tingling which worsened with neck exterision. He ordered an MR.I examinaron.
The applicant underwent the MR! examination on April 4, 2013. It revealed moderate spondyioiic change in the cervical spine with no severe foramina! or spina) cana! narrowing and degenerativo change in the right shoulder with no rotator cuff tear or labra! tear identified. The applicant continued to experience symptoms including neck pain and tingling in her right hand. On April 15,2013 Dr. Floren concluded there was potential nerve irritation in the'neck likely at C6-7 on the right. A steroid injection was prescribed and administered on April 19, 2013, However, no relief of symptoms resulted, On May 2,2013 Dr. Floren noted the applicant's condition was siowiy worsening arid referred her for a neurosurgical consultation with Dr, Eduardo Perez..
A.App. 136
[[Image here]]
*629 3
Or. Perez examinee the applicant and diagnosed a C6-7 osteophyte complex and degenerative disfcdisease at C5-6. Dr. Perez recommended surgical Intervention in the form of an anterior cervical discectomy C5 through C7, which was performed on June 4,2013. Recovery was uneventful and Dr. Floren declared herto be at a healing plateau on November 6,2013, rating permanent partial disability at 12 percent as compared ⅛ permanent and total disability
By certified medical report dated August 13, 2013, Dr, Floren concluded that the work activity directly caused the applicant's disability, in answers lo questions attached to that report he agreed the applicant's degenerative condition was not directly caused by any single work incident, that the symptoms began while she was performing overhead work scanning boxes and that the work duties on or about February 15,2013, were at least a material contributory causative factor in the progression of her cervical disability. !n an addendum dated. December 13,2013 he revised his estimate of permanency from 12 percent to 22 percent. In a'third addendum dated February 26, 2013, he revised his opinion to deny the work activity directly caused the disability. Rather he reported that activity caused the disability by precipitation, aggravation and acceleration of her preexisting progressively degenerating condition beyond normal progression. He further reported that an appreciable period of Workplace exposure at the employer-respondent either caused or was a material contributory causative factor in the onset or progression of the applicant's condition.
At the request of the respondents the applicants records were reviewed.by Dr. Morris Soriano. By certified medical report dated February 5,2014, Dr. Soriano found that the alleged incident of February 14,2013 caused* a cervical strain, with a healing period of four to six weeks. He further reported the work incident did not cause or aggravate her pre-existing condition. He noted the only finding during surgery was osteophytes at C6-7 with no evidence of disc herniation. He noted that reaching up with a 25 ounce scanner would not aggravate that condition.
To be compensable a claim for compensation must be established beyond a legitimate doubt. There is significant doubt as to the accuracy of the history upon which Dr. Floren rendered his opinions. The history as testified to was that of a sudden pain on the dato of injury with pain going down the posterior shoulder and arm to the wrists and that Dr. Morrisette's history of
A.Appv 137
[[Image here]]
*630 4
February 20; 2013 colours. However, Dr. Morriseite’s history on that date was only that "she had some neck pain and shoulder pain after doing some repetitive work above shoulder height" causing her to leave work the following day. The applicant Informed her physical therapist on February 25,2013 that "she started work without any pain buttowards the end ofthe day started getting really sore through her shoulder, neck ahd back." The applicant testified she Immediately _ felt pain like needle pricks. That was not mentioned in the contemporaneous records. On the’ contrary in the initial reports she denied any numbness or tingling. There was no mention of tlng!ing in the extremity until April 15,2013. The applicant provided no explanation for this slgriflcant difference in histories. Dr. Floren predicated his opinion upon the sudden onset of symptoms and that "...since that time she has been having unrelenting bumlng/shooting/pain when she puts her head in certain ways..." Again the mecilcal records contradict this. The applicant. roported significant improvement in her condition through March 28, 2013.
The opinions of a practitioner can be no better than the history upon which the opinion is rendered. Here the significant variance in the history as given from hat reflected in the contemporaneous records raise a legitimate doubt as to file compensability of tbs claim asa traumatic injury beyond that already conceded ana paid by the respondents. .While Dr. Floremaiso reported the appreciable workplace exposure was causative, this was not developed st hearing particularly given the inconsistency in history of injury on February 14, 2013.
NOW, THEREFORE, this:
oSP„§B
The application is ‘dismissed. *
[[Image here]]
FlugTracieRLSjasRDO
A.App, 138
[[Image here]]
*631 5
cc;
ATTORNEY JEFFREY J KLEMP
C/O KLEMP LAW OFFICES
LAW OFFICES OF JEFFREY KLEMP
4252 SOUTHTOWN DR STE B
EAU CLAIRE Wl 54701
ATTORNEY RICHARD D DUPLESSIE
C/O WELD RILEY PRENN & RICCI
3624 OAKWOOD HILLS PKWY
PO BOX 1030
EAU CLAIRE WI 54702-1030
A. App.
[[Image here]]
*632 - STATE OF WISCONSIN • . ' LABOR AND INDUSTRY SBV1BW COMMISSION P O BOX 61.26,‘MADISOÍÍ, WI 5370B-8126 Mtp.Y/dwd.wkcoasiii.gov/lirc/
TRAQIE L FLUG, Applicant 528 W CEDAR ST CHIPPEWA FALLS WT 5.4729 . ’WORKERS COMPENSATION ' DECISION
Claim No. 2013-006010
Dated and mailed?
WAL MART ASSOCIATES INC, Employer 2786’ COMMERCIAL ELVD CHIPPEWA FALLS W3 54729-5031 FEB 2 3 2015 ÍUKtr^wsd doc:HS:
NEW HAMPSHIRE INSURANCE CO, Insurer C/.0 CLAIMS MANAGEMENT INC PO BOX 1288 BENTONV3LLEAR 72712-1288
SEE ENCLOSURE AS TO TIME LIMIT AND PROCEDURES ON FURTHER APPEAL
An administrative law judge (AU) for the Worker's Compensation. Division of the •Department of Workforce Development issued a decision in. this matter. A timely petition for review was tiled.
The commission has considered the petition and the positions of the parties, and it .has .reviewed the evidence submitted to the AU. Based on its review, the commission, agrees with the decision of the AU, and it adopts the findings and order in that decision aa its own.
ORDER
'Hie findings and order of the administrative law judge are affhpied.
A.App. 140
[[Image here]]
*633 BY THE COMMISSION!
[[Image here]]
MEMORANDUM OPINION
The applicant has petitioned for commission review of the AU’s decision. The applicant asserts, that there is no dispute that she injured herself at work. Rather, the applicant argues that the medical dispute is over the nature and extent of the applicant’s disability. The. issue before the ALT whether the applicant sustained an injuiy pn February 14, 2013, arising out of and occurring while performing services growing out of and incidental to her employment with the employer. The 'applicant has the burden to establish that she suffered k work injury. The applicant failed to present credible medical evidence to establish that she suffered a work-related injury because the history upon which Dr. Floren relied', when making his determination as to whether the incident on February 14, 2013, resulted in awork injury was incorrect.
The applicant asserts that Dr, Soriano, the Respondent’s expert, is incorrect about the nature of the injury. The applicant asserts that Dr. Soriano indicated, that ' scanning a product on a shelf could not have aggravated or worsened two levels of a previously arthritic condition at C5-5 and C5-7 to the point they became symptomatic.- * However, die applicant asserts that there is no burden on the applicant to show that the exertion, was anything beyond unusual. -The AU did not adopt the findings of Dr. Soriano. Rather, the ALJ.was left with legitimate doubt as to whether the applicant suffered any work injury, and so he dismissed the application. See Leist v. LIRC, 183 Wis. 2d 450, 457 (1994).
The applicant also asserts that the respondent is liable for benefits under Wis. Stat. § 102.42(lm) because she in good faith’underwent invasive treatment that is generally medically acceptable but is unnecessary. The applicant asserts that Dr. Soriano determined that the applicant suffered a cervical strain as a result of the work incident and that the surgery was not reasonable and necessary to treat that work injury,- • * . . • ■
2
A.&pp. 141
[[Image here]]
*634 Wis*. Stat. § 102.42 provides:
(1m) Liability tor vknbce$s/&y treatment. If an employee who has sustained a compensable injury undertakes in good faith invasive treatment that ia generally medically acceptable, 'out that is unnecessary, the employer shall pay disability indemnity ior all disability incurred as a result of that treatment An^cmployer is not liable far disability indemnity for any disability incurred as a result of any unnecessary treatment undertaken in good’ faith that is noainvasive or not medically acceptable.- This subsection applies to all findings that an employee has sustained a compensable injury, whether the finding results Hum a heating, the default .of a party, or a compromise or stipulation confirmed by the department.
In order for Wis. Stat. § I02,42(lmJ lo apply the applicant must first establish that she sustained a compensable injury. The applicant loas failed to do this.
The applicant further asserts that .the ALJ erred when he concluded that the applicant gave a different history to Dr, Morisscttc than the one she gave to Dr, Floren. ‘ Since they both work in the same clinic and since .Dr. Floren wrote that Dr. Morissette’s "history concurs” the applicant asserts that the only reasonable* inference is that Dr. Floren reviewed the notes of Dr. Moriesette. The commission agrees v/ifh the AU’s • conclusions. In February, when the applicant sought treatment with Dr, Morissctte she stated that she had some pabi.after doing some work. _ The applicant told Dr. Floren that she had sudden and significant symptoms.
The applicant asserts that the AU conflated terminology and this led to additional misunderstanding. The applicant asserts that she did not provide an explanation for the significant difference in. histories because she was not asked to as she does nor believe them was a significant difference in. histories. She states she had pain butnot numbness or tingling at the onset of her symptoms. The applicant asserts that she did not experience, tingling until around March 22, 2013. The commission notes that the applicant experienced problems at work on February 14, 2013, but did not seek treatment untñ February 20, 2013, The commission notes that the applicant, was performing a relatively minor task on February 14, and using a scanner which was not heavy. The applicant gave very specific testimony at the hearing regarding radiating, needles going through the shoulder blade and radiating down into her aim. She also indicated that she felt something shift in her neck and it just pinched it off. This shifting was followed by a sudden onset of pain. Thus, the commission agrees with AU's conclusion that the variance in history raises a legitimate doubt as to the compensability of the claim, ' * * v
cc: Attorney Jeffrey J. Klemp Attorney Richard D. Duplessie
3
A-App. 142 TRACTS L FLUG
[[Image here]]
*635 5
cc:
ATTORNEY JEFFREY J KLEMP
b/O KLEMP LAW OFFICES
LAW OFFICES Or JEFFREY KLEMP
4262 SOUTHTOWN DR STE B
EAU CLAIRE Wl 54701
ATTORNEY RICHARD D DUPLESSIE
C/O WELD.RILEY PRENN & RICCI
3824 OAKWOOD HILLS PKWY
PO BOX 1030
EAU CLAIRE Wl 54702-1030
A.App. 143
[[Image here]]

 Wisconsin Stat. § 102.23(l)(a)2., provides in relevant part that "[w]ithin 30 days after the date of an order or award made by the commission, any party aggrieved by the order or award may commence an action in circuit court for review of *617 the order or award by serving a complaint as provided in par. (b) and filing the summons and complaint with the clerk of the circuit court."

 I would reverse and remand LIRC's decision for a determination of the threshold issue of whether Ms. Flug's work injury aggravated and accelerated her preexisting condition beyond its normal progression. With one exception, I also join Chief Justice Roggensack's dissent addressing Flug's alternative argument on the issue of good faith. As set forth herein, the majority opinion contains a number of factual missteps and therefore I cannot join the sentence in Chief Justice Roggen-sack's dissent that states "[t]he majority opinion ably sets forth the underlying facts." Chief Justice Roggensack's dissent, ¶ 47.

 Additionally, the majority states that the parties agree that Flug "suffered a permanent partial disability as a direct result of the treatment." Majority op., ¶ 18. Walmart concedes that Ms. Flug suffered a temporary disability due to her cervical strain. However, it does not agree that Ms. Flug suffered a permanent partial disability because it contests that Ms. Flug is entitled to worker's compensation benefits as a result of her surgery.

 The ALJ found as a factual matter that there was a variance in the history Ms. Flug gave her treating physicians. Based on this factual finding, the ALJ made the conclusion of law that "there is a legitimate doubt as to the compensability of the claim as a traumatic injury beyond that already conceded and paid by the respondents."

 Ms. Flug had surgery on both the C-5/C-6 level and the C-6/C-7 level. The Department of Workforce Development rule governing a scheduled worker's compensation injury provides in relevant part that "[t]he disabilities set forth in this section are the mínimums for the described conditions." DWD 80.32(1) *626 (2015-16); see also Wis. Stat. § 102.52. The minimum permanent partial disability rating for a discectomy and fusion is 10% per level. DWD 80.32(11).